# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS DICKSON, | : | Civil No. 3:17-cv-520 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| S. BOUNCE, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

## I. Background

Plaintiff, Curtis Dickson, an inmate formerly confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), commenced this *Bivens*[1], 28 U.S.C. § 1331, civil rights action on March 28, 2017. (Doc. 1). Named as Defendants are Lieutenant N. Carper, Senior Officer Specialist M. Vargeson (Houser)[2], and Bounce. The allegations in the complaint pertain to claims of sexual harassment and sexual assault by staff members at USP-Lewisburg.

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 19). For the reasons set forth below, the Court

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Defendant Houser is now known by the surname Vargeson. (Doc. 22, Statement of Material Facts, ¶ 17; Doc. 22-1, p. 9, Declaration of M. Vargeson (Houser), ¶ 5).

will grant Defendants' motion for summary judgment.

## II. <u>Summary Judgment Standard of Review</u>

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL 785808, at *3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." *Latham v. United States*, 306 F. App'x 716, 718 (3d Cir. 2009) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)). Accordingly, the Court will treat Defendants' filing as a motion for summary judgment.

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. *Bivens* Standard

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F.Supp. 1335, 1338 (M.D. Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the

4

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. Statement of Undisputed Facts

With the above summary judgment standard of review in mind, the following are the facts material to the present motion, drawing any reasonable inferences in favor of the non-moving party, Dickson.

Dickson is serving a life sentence imposed in the Superior Court for the District of Columbia for convictions of carrying a pistol without a license, possession of a firearm during a crime of violence, and second-degree murder while armed. (Doc. 22, Statement of Material Facts ("SMF"), ¶ 2; Doc. 22-1, p. 3, Declaration of E. Odell ("Odell Decl."), ¶ 4; Doc. 22-1, pp. 4-6, Public Information Inmate Data). At all relevant times, Dickson was housed in the Special Management Unit at USP-Lewisburg. (SMF ¶ 2; Doc. 22-1, p. 3, Odell Decl. ¶ 3).

On September 2, 2016, at approximately 11:45 a.m., Dickson asked to speak to Defendant Carper in Recreation Pen #14. (SMF ¶ 4; Doc. 22-1, p. 7, Declaration of N. Carper ("Carper Decl."), ¶ 2). Dickson reported to Defendant Carper that the officer who pat searched him prior to escorting him to the recreation pen touched him inappropriately in the groin area. (SMF ¶ 5; Doc. 22-1, p. 7, Declaration of N. Carper ("Carper Decl."), ¶ 2). After

reporting this claim of inappropriate touching, Defendant Carper took Dickson to a holding cell on the second floor of B-Block to speak with him in a more private setting. (SMF ¶ 6; Doc. 22-1, p. 7, Carper Decl. ¶ 3). Defendant Carper then contacted a Special Investigative Agent, who reviewed the range video and investigated Dickson's allegations. (SMF ¶ 7; Doc. 22-1, p. 7, Carper Decl. ¶ 4). Dickson disputes whether a Special Investigative Agent was ever contacted on September 2, 2016. (Doc. 24, p. 2).

The parties dispute whether Defendant Carper conducted a visual search of Dickson on September 2, 2016, while he was in the holding cell. (SMF ¶ 8; Doc. 22-1, p. 7, Carper Decl. ¶ 5; Doc. 24, p. 2). Defendant Carper did not observe other staff conducting a visual search of Dickson. (SMF ¶ 8; Doc. 22-1, p. 7, Carper Decl. ¶ 5). USP-Lewisburg maintains a log of visual searches. (SMF ¶ 9; Doc. 22-1, p. 7, Carper Decl. ¶ 6). Defendant Carper reviewed the log of visual searches conducted on September 2, 2016, and there is no record of any staff conducting a visual search of Dickson on that date. (SMF ¶ 10; Doc. 22-1, p. 7, Carper Decl. ¶ 6).

The parties dispute whether Defendant Carper wrote Dickson an incident report to conceal any alleged staff misconduct. (SMF ¶ 11; Doc. 22-1, p. 7, Carper Decl. ¶ 7; Doc. 24, pp. 2, 11). Defendant Vargeson did not hear Defendant Carper state, "What type of shot should we write him up for?" (SMF ¶ 20; Doc. 22-1, p. 9, Declaration of M. Vargeson (Houser) ("Vargeson Decl."), ¶ 1).

The parties dispute whether Dickson informed Defendant Carper that Defendant Vargeson sexually harassed him. (SMF ¶ 15; Doc. 22-1, p. 8, Carper Decl. ¶ 9; Doc. 24, pp. 2-3). Dickson did not request medical or psychological services. (SMF ¶ 12; Doc. 22-1, p. 7, Carper Decl. ¶ 8). Medical and psychological services are available to inmates when Health Services and psychology staff make regular rounds. (SMF ¶ 13; Doc. 22-1, p. 7, Carper Decl. ¶ 8). An inmate can also request medical and psychology services from any correctional officer at any time. (SMF ¶¶ 12-14; Doc. 22-1, p. 7, Carper Decl. ¶ 8). Dickson contends that prison protocol requires staff to provide medical and psychological services even if the inmate does not request such services. (Doc. 24, pp. 2-3).

The parties dispute whether Defendant Vargeson made a sexually charged comment to Dickson. (SMF ¶¶ 18-19; Doc. 22-1, p. 9, Vargeson Decl. ¶¶ 2-3; Doc. 24, p. 3).

There is no staff member named "Bounce," or staff member with a similar last name, who was employed at USP-Lewisburg during the relevant time period of September 2016.[3] (SMF ¶¶ 22-24; Doc. 22-1, p. 10, Declaration of D. Caribardi ("Caribardi Decl."), ¶¶ 3-4).

## III. Discussion

Defendants seek dismissal of the complaint or, in the alternative, an entry of summary judgment in their favor, based on the following: (1) Dickson failed to state constitutional claims; (2) Dickson is not entitled to compensatory damages or equitable

---

[3] By separate Order, the Court will dismiss the action against Defendant Bounce pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

relief; and (3) Defendants are protected by qualified immunity. (Doc. 23). The Court will address these claims *seriatim*.

### A. Prison Rape Elimination Act Claim

Dickson alleges that after he reported claims of sexual assault and harassment, Defendant Carper denied him medical and psychology treatment and permitted the staff members against whom he asserted those claims to remain in contact with him. (Doc. 1, p. 4). Dickson seemingly alleges that through these actions, Defendant Carper failed to comply with the Prison Rape Elimination Act ("PREA"). (*Id.*). To the extent that Dickson attempts to raise a claim pursuant to the PREA, this claim must fail. The PREA does not provide a private right of action and Dickson is thus prohibited from asserting a claim pursuant to PREA. *See Bowens v. Emps. of the Dep't of Corr.*, 2015 WL 803101, at *1 n.1 (E.D. Pa. 2015); *Washington v. Folino*, 2013 WL 998013, at *4 (W.D. Pa. 2013) (holding that violations of the Prison Rape Elimination Act do not create a private cause of action); *Nestor v. Dir. of NE. Region Bureau of Prisons*, 2012 WL 6691791, at *3 (D.N.J. 2012) ("Plaintiff may not assert a private claim under the PREA."). Consequently, the motion for summary judgment will be granted on the PREA claim against Defendant Carper.

### B. Eighth Amendment Sexual Harassment Claim

Dickson alleges that he was subjected to verbal sexual harassment by Defendant Vargeson. (Doc. 1, p. 3). As to Dickson's claim that Defendant Vargeson made a sexually

suggestive statement to him, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. *See Marten v. Hunt*, 479 F. App'x 436 (3d Cir. 2012); *Lewis v. Wetzel*, 153 F.Supp.3d 678 (M.D. Pa. 2015). The Court will grant Defendants' motion for summary judgment as to any claim of verbal harassment.

Dickson also fails to state a claim under the Eighth Amendment for sexual harassment. Although the Third Circuit Court of Appeals has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate, other circuits have addressed this issue. "To prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas v. Vault*, 109 F.3d 1335, 1338 (8th Cir. 1997). "Courts of appeals have held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction." *Chambliss v. Jones*, 2015 WL 328064, at *3 (M.D. Pa. 2015) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (acknowledging the presence of an Eighth Amendment violation when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (noting that verbal sexual harassment without accompanying physical contact is not enough to state a claim for an Eighth Amendment

violation)). Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim. See *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. 2012). Rather, physical sexual assault or threats of physical assault is required for the objective element to be met. See *Chambliss*, 2015 WL 328064. Other courts in this circuit have indicated that an inmate can only state an Eighth Amendment claim against a correctional officer for sexual harassment by alleging severe or repetitive sexual abuse. See, e.g., *Miller v. Coning*, 2011 WL 2708649 (D. Del. 2011); *Harris v. Zappan*, 1999 WL 360203 (E.D. Pa. 1999). Under this standard, "a single isolated incident of sexual harassment that is not in and of itself severe" cannot support a cognizable Eighth Amendment claim. *Robinson v. Danberg*, 729 F.Supp.2d 666 (D. Del. 2010) (citing *Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997) (bumping and pressing whole body against inmate not sufficiently serious to satisfy objective component) and *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (grabbing buttocks not sufficiently serious to satisfy objective component)); *Baylor v. Pennsylvania Department of Corrections*, 2013 WL 5177573 (M.D. Pa. Sept. 13, 2013) (citing *Jackson v. Madery*, 158 F. App'x 656, 661-62 (6th Cir. 2005) (allegation of rubbing and grabbing of buttocks in degrading manner not sufficiently serious) and *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (asking inmate to have sex and masturbating in front of inmate not sufficiently serious)); *Jones v. Culinary Manager II*, 30 F.Supp.2d 491,

497 (E.D. Pa. 1998) (grinding on buttocks with penis while threatening to have sex with inmate not sufficiently serious).

Dickson's claims against Defendant Vargeson are based solely on an alleged sexually charged comment. In the complaint, Dickson alleges that on or about September 3, 2016,[4] Defendant Vargeson sexually abused him "with threats." (Doc. 1, p. 3). There is no allegation or evidence of any direct physical contact or pain. Consequently, Dickson's claim does not rise to the level of an Eighth Amendment violation and Defendants' motion for summary judgment will be granted on the sexual harassment claim.

### C.  Retaliation Claim

Dickson appears to allege that he was placed on "visual strip search and double cuff status", and issued a misconduct,[5] in retaliation for reporting alleged violations of the PREA. (Doc. 1, pp. 3-4). The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See *Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First

---

[4] The evidence reveals that the incident at issue allegedly occurred on September 2, 2016.

[5] The complaint is silent regarding any claim that Dickson suffered retaliation in the form of a false misconduct report. *See* (Doc. 1). Although unclear, in his brief in opposition to Defendants' dispositive motion, Dickson appears to assert that the misconduct was issued a retaliatory act. (Doc. 24, p. 2).

11

Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

Dickson's allegation that he was retaliated against because he filed a PREA complaint implicates conduct protected by the First Amendment sufficient to satisfy the first prong of the *Rauser* test. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002), quoting *Allah*, 229 F.3d at 225. Dickson asserts that he suffered adverse action in the form of being visually searched and double-cuffed, and being issued a misconduct. These actions could deter a reasonably firm prisoner from exercising his First Amendment rights. Thus, Dickson has satisfied the second *Rauser* prong.

In analyzing the third element, the Court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (not precedential); *Romansky v. Stickman*, 147 F. App'x 310, 312 (3d Cir. 2005) (not precedential). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams v. Folino*, 664 F. App'x 144, 148-49 (3d Cir. 2016) (not precedential) (quoting *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016); *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).

Dickson fails to establish a causal link between filing the PREA complaint and being

13

visually searched and double-cuffed. Dickson fails to produce any evidence that Defendants' actions were not routine duties of correctional staff in maintaining the safety and security of the institution. Dickson has failed to set forth facts that raise the inference that filing PREA complaints was a substantial or motivating factor in placement "visual strip search and double cuff status." *See Swinson v. Blakely*, 633 F. App'x 80, 83 (3d Cir. 2015) (finding that the inmate's act of filing grievances was a constitutionally protected act, the prison officials' act of placing prisoner in solitary confinement constituted adverse action, however the prison officials did not retaliate against prisoner for filing grievances, rather they placed the inmate in restricted housing because he was a danger to others).

Regarding the purported claim of retaliation by false misconduct report, the evidence reveals that Dickson was issued a misconduct on September 2, 2016. (Doc. 24, p. 11). On September 6, 2016, Dickson appeared for a hearing before the Unit Discipline Committee ("UDC"). (*Id.*). The UDC found that Dickson was guilty of the charges of lying and making a false statement, and issued sanctions accordingly. (*Id.*). An inmate's retaliation claim fails when there is "some evidence" to support the discipline citation. As the Third Circuit Court of Appeals has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings. . . . *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." *Nifas*, 374 F. App'x at 244.

The UDC held a hearing and determined that Dickson was guilty of the charges. There is some evidence that Dickson committed the misconduct as charged. Consequently, Defendants are entitled to an entry of judgment in their favor on the retaliation claim.

D.  **Claim for Compensatory Damages and Equitable Relief**

Dickson seeks compensatory damages as a result of the alleged violation of his constitutional rights. (Doc. 1, p. 3). However, absent an allegation of physical injury, Dickson cannot obtain compensatory damages. See *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) (concluding that mental and emotional distress cannot support a claim for compensatory damages). Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); See *Martinez v. United States*, 2012 U.S. Dist. LEXIS 129809, 29-30 (M.D. Pa. 2012) (recommending that the motion to dismiss the prisoner's claim for compensatory damages be granted because he did not allege any physical injury attributable to emotional distress from the defendants' actions), *adopted by*, 2012 U.S. Dist. LEXIS 129815 (M.D. Pa. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003)). "[T]he law is clear that an inmate cannot recover for emotional injury if no physical harm is stated." *Morales v. Beard*, 2011 U.S. Dist. LEXIS 78308, *19 n.9 (M.D. Pa. 2011), *adopted by*, 2011 U.S. Dist. LEXIS 78303 (M.D. Pa. 2011). Accordingly, Defendants' motion will be

granted as to Dickson's claim for compensatory damages.

Additionally, Dickson seeks equitable relief in the form of the return of certain books and transfer to a different facility. (Doc. 1, pp. 3-4). Dickson is no longer confined at USP-Lewisburg. *See* (Doc. 25, Notice of Change of Address). "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (citing *Abdul-Akbar*, 4 F.3d 195, 197 (3d Cir. 1993) (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial)). Therefore, Dickson's claims for equitable relief are moot.

### E. Qualified Immunity

Defendants invoke the defense of qualified immunity in their motion. (Doc. 23, pp. 10-12). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate

the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as to whether a constitutional right has been violated, Defendants are protected from liability by qualified immunity.

## IV. Conclusion

Based on the foregoing, Defendants' motion (Doc. 19) for summary judgment will be granted. A separate Order shall issue.

Date: February 26, 2018

Robert D. Mariani
United States District Judge